County Com'rs of Prince George's Co., &c., *vs.* Clarke & Berry.

as the one contemplated by the parties, when such line is left by the terms of the deed, ambiguous and uncertain." That is where the ambiguity is a latent one; but not where such evidence would contradict or control the language of the deed.

The deed before us does not present a case of latent ambiguity, but the uncertainty and ambiguity complained of is apparent upon its face. The parol evidence, which was offered and admitted by the Court below, as set forth in the first and second bills of exception, alters and contradicts it, and we think was clearly inadmissible. This deed is vital to the recovery of the appellee, who was plaintiff below, and as it cannot be located, there is no reason for sending the case back for a new trial.

*Judgment reversed.*

(Decided 18th June, 1872.)

THE COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY, and LUNA ALDEN McCOLLOUGH, Purchaser, *vs.* DANIEL CLARKE and ALONZO BERRY.

*When property is Exempted from Seizure and Sale by a Tax collector—Duty of Tax collector—Insufficient proof of the Publication of the Notice to be given by the County Commissioners in reference to Taxes due and unpaid—Sufficiency of the Notice of the Sale of property for Taxes—Order required by the Act of 1870, ch. 112, upon a Report of the Sale of land for Taxes.*

After a decree has been passed by a Court of Equity for the sale of real estate, and trustees have been appointed to make the sale, the property is under the control and jurisdiction of the Court, and a tax collector has no power to seize and sell the same or any part thereof for taxes due.

County Com'rs of Prince George's Co., &c., *vs.* Clarke & Berry.

Where real estate on which taxes are due, has been sold under a decree of a Court of Equity, the duty of the tax collector is to apply to the Court to have the taxes paid out of the proceeds of sale.

The certificate of a printer that the notice given by the County Commissioners in reference to taxes due and unpaid, was published for thirty days, beginning February 21st, 1869, is not sufficient proof that the notice was published "once a week for four weeks," as required by Art 81, sec. 56, of the Code. The proof in this respect must be affirmative and certain, and not left to conjecture and inference.

A notice of the sale of property for payment of taxes due and in arrear, set up "at the Court House door and at three other of the most public places in the county," is a sufficient compliance with the requirement in Art. 81, sec. 59, of the Code, that the notice shall be put up "at the Court House door and at the most public places in such county." It is not required that the notice should be put up at *all* the most public places in the county.

The order required by the Act of 1870, ch. 112, to be given by the Circuit Court, upon the report of a sale of land for taxes in arrear, warning all persons interested in the property sold to appear by a day certain, and show cause, if any they have, against its ratification, is not final and conclusive; irregularities upon the face of the proceedings in relation to such sale, are open to examination at the final hearing for ratification.

APPEAL from the Circuit Court for Prince George's County.

On a creditors' bill filed in the Circuit Court for Prince George's county, in equity, by Paulina A. Berry and others against Rachel M. Berry and others, a decree was passed on the 9th of November, 1865, for the sale of the real estate of John E. Berry, Sr., deceased, and Daniel Clarke and Alonzo Berry were appointed trustees to make sale of the same. On the 9th of November, 1867, certain portions of this estate were sold by the trustees. On the 27th of May, 1868, an order of ratification *nisi* was passed; exceptions were filed to the ratification of the sale, and on the 30th of April, 1869, the Court (FORD and MAGRUDER, J.) passed an order referring the cause to the auditor to make a statement of the claims of the complainants and of the other creditors of the

deceased John E. Berry, Sr., with their relative and positive liens, upon pleadings and proof then in the cause, and such further proofs as might be produced before him upon the usual notice to the respective parties. Pending these proceedings, and while the case was before the auditor, Nathan Masters, a collector of State and county taxes for the second collection district of Prince George's county, for the years 1866 and 1867, made sale of a portion of said real estate, and on the 27th of October, 1870, filed in the Circuit Court of said county a report showing that as such collector he left at the dwelling house on "Independence," a part of the real estate of John E. Berry, Sr., deceased, and the place of abode of Rachel M. Berry, one of the executors of John E. Berry, Sr., a statement showing the aggregate amount of taxes of every description, with which the said John E. Berry, Sr., was assessed, with a notice annexed thereto, that unless the taxes so due were paid within thirty days thereafter, he would proceed, by way of distress or execution, to collect the same; that the said taxes so due not having been paid as required, and finding no personal property of any kind out of which to make the same, he returned to the county commissioners of said county, among others, the said tract of land, containing two hundred and fifty acres, on which the State and county taxes for the years 1866 and 1867 had not been paid, and the amounts due thereon, together with the name of John E. Berry, Sr., the person in whose name the same was assessed and chargeable with the payment of the same, and certified to the said commissioners that he could find no personal property in the said county liable for or chargeable with the payment of the said taxes.

That thereupon the said county commissioners caused an advertisement, expressing the name of said tract or parcel of land, so far as could be ascertained, and the location thereof, and the amount of taxes due thereon, together with the name of the person chargeable with the payment of the same, to be inserted in the "Marlboro' Gazette," a newspaper published

County Com'rs of Prince George's Co., &c., *vs.* Clarke & Berry.

in Upper Marlboro', in the said county, for thirty days—the first publication having been on the 21st day of February, 1869—and giving notice, that unless the taxes due on the said land or real estate should be paid to the said collector within the space of thirty days after the completion of the publication of said notice, the land so charged, or such part thereof as might be necessary to raise the sum due thereon, should be sold to the highest bidder for the payment of the same. The report further showed that the time mentioned in the said advertisement having expired, and the said taxes not having been paid, the said county commissioners did direct the collector as aforesaid, after twenty days previous notice, at the Court House door, and at three other most public places in said county, and by publication in a newspaper having general circulation in said county, to sell to the highest bidder the said tract of land, or such part thereof as might be necessary to pay the said taxes so as aforesaid due; and in pursuance of said direction and authority, the collector as aforesaid, having previously given the legal notice, did cause the said land to be advertised for sale for more than twenty days, in the "Marlboro' Gazette," a newspaper published in Upper Marlboro', in said county, and having general circulation therein, and by notice set up at the Court House door of said county, and at three other of the most public places in said county—the first notice having been on the 9th day of June, 1869, and continued to the 1st day of July, 1869, the day of sale—on which 1st day of July, 1869, at the time and place named in said notice, he offered the said land for sale to the highest bidder, for cash, but receiving no bid for the same, withdrew the said land and postponed the sale.

The report further stated that Alonzo Berry, one of the executors of the said John E. Berry, Sr., paid to the aforesaid collector, as such, a portion of the taxes due for the year 1866, leaving a balance due for said year of $46.47; which amount, together with the whole tax for 1867, not having been paid,

he, as such collector, left at the dwelling house on said land, the usual place of abode of Rachel M. Berry, one of the executors of the said John E. Berry, Sr., notice of the amount of taxes due on said land, and stating that unless the same were paid within thirty days, with interest, the same would be collected according to law; which said time having expired, and the taxes not having been paid, the collector as aforesaid proceeded to lay off so much and such part of the land as would be adequate and sufficient to pay the taxes due as aforesaid, and laid off and surveyed forty acres and twenty-eight perches of land.

The collector further reported that he then proceeded to advertise the said land, or so much thereof as would be necessary to pay the taxes due, in lots or parcels, on Thursday, the 29th day of September, 1870, at the hour of 12 o'clock, M., (having previously given the legal notice in writing to the owners thereof, by leaving the same at the dwelling house on the premises,) in the "Marlboro' Gazette," and by advertisements set up at the Court House door of said county, and at three other most public places in said county—the first notice of sale having been on the 7th day of September, 1870, and continued to the 29th day of September, 1870, the day of sale—on which 29th day of September, 1870, at the time and place named in said notices and advertisements, he offered a portion of said land at public sale, for cash, to the highest bidder; he first offered a portion of said lot so laid off as aforesaid, but receiving no bid for the same, he then offered the whole of said lot, containing forty acres and twenty-eight perches, when the same as offered was sold to Luna Alden McCullough, wife of George McCullough, Esq., of Prince George's county, Maryland, she being then and there the highest bidder for the same and purchaser of said lot of land; at and for the sum of $360; the said amount being the amount of taxes and interest, and the costs and expenses of sale; and that the said sum of $360, the purchase money for the said land, was paid in cash by the said purchaser to the collector aforesaid.

Accompanying this report were the printed notice of the county commissioners, the surveyor's certificate, the advertisements of sale of the property, and the certificate of the printer, in which he stated that the notice by the county commissioners of taxes due by the estate of John E. Berry, Sr., deceased, for the years 1866 and 1867, was published in the "Marlborough Gazette" for thirty days, beginning the 21st of February, 1869; that the annexed notice of the sale of land of the estate of John E. Berry, Sr., deceased, was published for three successive weeks in the "Marlborough Gazette," beginning the 9th of June, 1869; and also for three successive weeks, beginning the 7th of September, 1870.

On the report of sale the Court, (MAGRUDER, J.,) on the 27th day of October, 1870, passed an order of ratification *nisi*. Exceptions were filed to the ratification of the sale by Laura L. Stewart, a creditor of the estate of John E. Berry, Sr., and a purchaser of a portion of the real estate from the trustees Clarke and Berry, who likewise objected to the ratification of the sale for the following reasons:

1st. Because the said real estate was decreed to be sold by an order of the Circuit Court for Prince George's county, sitting in Equity, passed in the cause of *Paulina A. Berry, et al. vs. Rachel M. Berry, and others*, on the 9th day of November, 1865, and the collector had no right or authority to sell the same or any part thereof, the said real estate being under the control and jurisdiction of the said Court or its officers, but the taxes due on the said real estate were a lien on the said real estate, to be first paid and satisfied by the trustees when the sale of the said real estate should be made by them.

2d. Because the said real estate was decreed to be sold by decree of the Circuit Court for Prince George's county, sitting in Equity, passed in the cause of *Paulina A. Berry, and others vs. Rachel W. Berry, and others*, No. 484 — the said decree being dated the 9th day of November, 1865; and under the said decree the trustees made sale of the said real estate, as appears more fully by their report filed in the said cause, and the ratification of the said sale was still pending under the

proceedings in the said cause, which are referred to at length, and are made a part of this exception as if they were fully set forth herein. And the collector had no right to interfere with the jurisdiction of the said Circuit Court over the real estate, pending the proceedings for the ratification of the said sale, and while the rights of parties to the said real estate were suspended by the order of the said Court, passed in the said cause, bearing date the 30th day of April, 1869.

3d. Because the statement and notice left at the dwelling house of Rachel M. Berry, one of the executors of John E. Berry, Sr., showing the aggregate amount of taxes with which the said John E. Berry, Sr., was assessed, was improperly left at the residence of the said Rachel M. Berry, as she was not the party by whom the taxes were to be paid—the taxes having accrued after the death of the said John E. Berry, Sr., and not during his lifetime.

4th. Because the notice required to be given by the county commissioners by Article 81, section 56, of the Code of Public General Laws, does not appear to have been given according to law, it not appearing that the notice was inserted once a week for four weeks.

5th. Because the second notice was improperly left at the residence of the said Rachel M. Berry, as she was not the party by whom the taxes were to be paid.

6th. Because the said notice was not in accordance with the requirements of the law.

7th. Because the collector had no authority to advertise the property under the advertisement of September 7th, 1870, without first obtaining another order from the county commissioners, in pursuance of the requirements and provisions of Article 81, section 59, of the Code, payment having been made on account of the said taxes between the date of the original order, and the offer of the property for sale under the said first order, and the date of the advertisement of September 7th, 1870, under which advertisement the property was sold, and the property was advertised for

sale for an amount different from the amount specified in the advertisement of the commissioners, bearing date the 21st day of February, 1869.

8th. Because it does not appear that notice of the said sale was given as required by law.

9th. Because the collector has returned or reported the property sold to a different person from the purchaser named in the schedule of tax sale filed with his report.

10th. Because the collector sold more land than was necessary to defray the proper charges and expenses. And a portion of the said charges and expenses should not be allowed.

11th. Because there was no sufficient notice of the amount of taxes due, and no copy of notice filed with the report.

12th. Because the report does not state where the advertisements of sale were stuck up.

13th. Because the lot laid off is not upon the outlines of said land, and will depreciate the value of the other portion.

14th. Because the charges for costs are excessive, and not according to law.

15th. Because the survey was not made by the county surveyor, nor by a person authorized by order of Court.

The Court (MAGRUDER, J.) sustained the first, second, third, fourth and eighth objections and overruled the others; and on the 28th of June, 1871, passed an order vacating and setting aside the sale.

From this order the county commissioners and the purchaser at the collector's sale appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, GRASON, MILLER and ALVEY, J.

*Joseph K. Roberts, Jr.,* and *William H. Tuck,* for the appellants, argued

That real estate in charge of trustees is equally liable with all other property for the payment of the taxes assessed and levied upon it; and that where trustees, or other parties inter-

ested in said property, fail or neglect to pay the taxes when due, and there is no personal property liable for the same, then the real estate becomes liable and can be sold, although at the time under the charge of a trustee.

The revenue derived from taxation is essential to the support of the government of the State, and the collection of taxes ought not to be impeded or indefinitely postponed, and the finances of the State embarrassed, because taxable property may happen to be under the control of a Court of Equity. It is true that the law provides that in all cases of sales of property the taxes shall be first paid and satisfied, but the law does not say that the collection of taxes shall be delayed until such sales are made. *Code, Art.* 81, *sec* 71.

A tax is a lien upon real estate as much so as a judgment or mortgage. *Eschbach vs. Pitts,* 6 *Md.,* 71. Indeed it is a preferred lien to either, and yet a mortgage or judgment creditor, not a party to the decree, is not estopped from selling for his debt. Why then should a collector of State taxes be prevented from collecting a debt due the State, which has, as in this case, been due for more than three years?

All taxes, upon assessed property, ought to be equally collectable, whether that property be held by the individual owners or by trustees—the tax being imposed upon the *property* and not upon the *owner*. *Fulton, et al. vs. Nicholson, et al.,* 7 *Md.,* 104.

But if property in the hands of trustees be not equally liable to execution and sale with other property, for the payment of taxes, the appellees cannot avail themselves of the right which the law might otherwise give them, by exceptions to the sale, after the sale has been made by the collector. Their proper remedy would have been by bill or petition for an injunction restraining the collector from making such sale. After the sale has been made, and the property purchased by a third party at public sale made by the officer of the State or county, without objection, it is then too late for the trustees to set up their claim to the property.

The exceptions properly go only to the regularity of the sale, and are not to determine the right of the collector to sell or the title to the property sold.

The third exception, and which is sustained by the Court below is, that the preliminary statement of the taxes and notice was improperly left at the residence of Rachel M. Berry, one of the executors of John E. Berry, Sr., &c.

The collector reports, under oath, that he left said statement and notice at the "*dwelling house on Independence, the tract of land hereinafter referred to,* and the place of abode of Rachel M. Berry, executor," &c. It is true there is no proof that any of the heirs-at-law of John E. Berry, Sr., resided there at the time, nor did the collector suppose that such proof would be required, further than what is stated in his report, but it can be fairly presumed that some of the heirs did reside there. The Code, Article 81, section 49, says, the collector shall first leave with the party (meaning some one or other of the parties) by whom the taxes are to be paid, *or at his usual place of abode.* And the Court below say that a notice left with an heir-at-law, or *at his abode,* is sufficient.

By his will, John E. Berry, Sr., directed that his wife, Rachel M. Berry, and his then unmarried daughters, should have a home at Independence during her life—the place to be worked by his executors, and the proceeds to be applied to their support, &c.; and the proof shows, that some of his heirs-at-law did reside at Independence. The collector then gave sufficient notice.

The fourth exception and which is sustained by the Court below is, that the notice required to be given by the county commissioners does not appear to have been published once a week for four weeks.

The editor of the Marlboro' Gazette certifies that "the annexed notice of taxes was published for thirty days in the Marlboro' Gazette, beginning the 21st of February, 1869, and that the advertisement of sale was published for three successive weeks, beginning the 7th of September, 1870." When

therefore he certifies that it was published for thirty days, he must mean that it was *published in every paper that was issued during those thirty days.* Had it been otherwise, he would have said that thirty days' notice was given by publication for one week or two weeks, as the case might be.

The eighth exception is as to the sufficiency of the notice of sale. The Court below decided that the advertisement of sale in the Marlboro' Gazette was sufficient—the only defect being in the statement of the collector that the notice was set up at *three* of the most public places in the county, instead of *at the most public places.* The law (*Code, Art. 81, sec. 59,*) certainly does not require that notices shall be posted at *all* of the most public places in the county, for such a construction would require almost an impossibility. When therefore the collector reports that he has given notice at three of the most public places, he has to all intents and purposes complied sufficiently with the requirement of the law.

*Daniel Clarke* and *Samuel H. Berry,* for the appellees, contended

That after a decree has been passed for the sale of real estate, and trustees have been appointed to make such sale by a Court of Equity of this State, the property passes under the control and custody of the Court, and neither a collector of taxes has the right to sell the same for taxes becoming due after the date of the decree, nor has a Court of Common Law, under the statutory jurisdiction conferred by the Act of 1867, ch. 186, the right to confirm a sale made by the collector pending the proceedings in the Court of Equity.

Where a Court of Equity, with *competent* authority, and with power to *grant adequate* relief, has first entertained jurisdiction of any subject-matter, its control over that subject-matter, pending the proceedings, is exclusive, and ousts the jurisdiction of a Court of Law, and of the county commissioners acting in the exercise of the powers conferred upon them. *Brooks vs. Delaplaine,* 1 *Md. Ch. Dec.,* 351; *Snyder*

vs. *Snyder,* 1 *Md. Ch. Dec.,* 295; *Winn & Ross vs. Albert,* 2 *Md. Ch. Dec.,* 53, 54; *Brown vs. Wallace,* 4 *G. & J.,* 479; *Albert vs. Winn,* 7 *Gill,* 446, 482, 484, 487; *Withers, et al. vs. Denmead,* 22 *Md.,* 146.

By the 71st section of Article 81 of the Code, a Court of Equity possesses full power to secure the payment of the taxes due to the State and county. *Fulton vs. Nicholson,* 7 *Md.,* 104; *Boligiano vs. Cooke,* 19 *Md.,* 375; *Tuck vs. Calvert,* 33 *Md.,* 209.

The simple question which the first and second exceptions raise, is the *quo modo* in which this liability for taxes is enforced against the property.

It is to be done under and through the jurisdiction which the Court of Equity exercises over the property, and not by ousting this jurisdiction and rendering the decree a nullity. The delay which may accrue in the payment of the taxes is incident to all legal proceedings.

The objection taken by the appellants, that the exceptants cannot except *after* a sale has been made by the collector, but that the proper remedy was by injunction *prior* to the sale, restraining him from making the sale, cannot be maintained.

Although this remedy might have been invoked, the trustees have a right to select their mode of relief, when they have several different remedies.

The collector reported that he left the statement of the amount of taxes, with a notice annexed, that unless paid within thirty days he would proceed, by way of distress or execution, "at the dwelling house on Independence, the tract of land hereinafter referred to, and the place of abode of Rachel M. Berry, one of the executors of John E. Berry, Sr." This was not sufficient, nor was the place of abode of the executrix the proper place to leave the notice. *Art.* 81, *sec.* 49, *of the Code.*

Ordinarily, the executor is not the proper person to whom to give the notice, or at *whose residence* the notice is to be left, where the party, in whose name the land is assessed, is dead.

County Com'rs of Prince George's Co., &c., vs. Clarke & Berry.

The taxes which accrue after the death of the party, are due and are to be paid on real estate by the *heirs-at-law.* There is no proof that any of the heirs-at-law had their "usual place of abode" at Independence.

After the decree the trustees were the parties by whom the taxes were to be paid. *No notice appears to have been given to either of them, or left at their usual places of abode.*

The Court was right in sustaining the *fourth* exception. *Code, Art.* 81, sec. 56.

Proceedings by collectors for the sale of property in payment of taxes, must conform *strictly* to the requirements of law, and this must be shown *affirmatively,* either by the proceedings or by prrof.

Neither the report nor the printer's certificate shows that the notice was published "at least once a week for four weeks." *Owings vs. Worthington,* 10 *G. & J.,* 283; *Polk vs. Rose & Cronhardt,* 25 *Md.,* 153; *Taylor vs. Bruscup and Henry,* 27 *Md.,* 219; *Beatty, et al. vs. Mason, et al.,* 30 *Md.,* 409.

BRENT, J., delivered the opinion of the Court.

This case is an appeal from the Circuit Court for Prince George's county, before which proceedings were taken under the Acts of 1867, ch. 186, and 1870, ch. 312, for the ratification of the sale of certain real estate, made by a collector of taxes. Several exceptions have been filed as reasons why the sale should not be ratified, but it is only with the first, second, third, fourth and eighth that we have to deal, as the rulings of the Court below upon the other exceptions were not adverse to the appellants, and are therefore not before us upon this appeal.

The first and second exceptions are substantially the same. They present the question whether, after a decree has been passed by a Court of Equity for the sale of real estate and trustees have been appointed to make such sale, a collector of taxes has the power to seize and sell the same, or any part thereof, for taxes due. The decree was passed the 9th of

November, 1865. The taxes for which the land was sold were assessed for the years 1866 and 1867, and the collector's sale took place the 29th of September, 1870. The land in the meantime had been sold by the trustees, under the decree in the equity case, but exceptions having been filed to the sale, the question of its ratification was still pending. So that both at the time of the imposition of the taxes and at the time of the collector's sale, the land in question was under the control and jurisdiction of a Court of Equity. Under these circumstances it was not admissible for a collector to step in, and by a summary distress and sale divest the Court of its jurisdiction, and transfer the question of title to another tribunal. His plain and obvious duty was to apply to the Court for the payment of the taxes due, and as they had full power, the presumption is, that they would have directed their payment through their agents, the trustees, in a manner that would have occasioned no unnecessary delay, while at the same time the rights of all interested would have been properly protected.

The third exception is to the notice, upon the ground that it was not left with the party by whom the taxes were to be paid, or at his place of abode, as required by section 49 of Article 81 of the Code. The notice was left with Rachel M. Berry, one of the executors of John E. Berry, Sr. The taxes were not due during his lifetime, and were therefore not properly chargeable to his executors. The land upon which they were assessed had been devised by the will of John E. Berry, Sr., and his devisees, or some one of them having a present interest, would have been the proper parties upon whom the notice should have been served, if their title and possession had remained undisturbed. But proceedings were instituted in a Court of Equity on the part of creditors to sell the land, and a decree for its sale having been passed, these devisees had no such interest as rendered them chargeable with the taxes due. The property was in the constructive possession of the Court, and there was in reality no one with whom a

notice, as a foundation for a sale by the collector, could have been left. As before stated, the proper and only course for the collector to pursue, so long as the land continued under the jurisdiction and control of a Court of Equity, was to make an application to that Court for an order that would, according to the circumstances of the case, be effectual in realizing to him the amount of taxes due.

The fourth exception is that the notice required by Article 81, section 56, of the Code to be given by the county commissioners, does not appear to have been given according to law, it not appearing that the notice was published " once a week for four weeks." The appellants have chosen to rely upon the certificate of the printer, which states that the notice was published "for thirty days, beginning February 21st, 1869." This is not sufficient proof of a compliance with the requirement of the law. *Johnson and Wife vs. Robertson,* 31 *Md.,* 488. It may be that a publication for thirty days was once a week for four weeks, (meaning four successive weeks,) but it by no means follows. It may have been inserted only every other week, and yet published the number of days stated in the printer's certificate. The proof in this respect must be affirmative and certain, and not left to conjecture and inference.

The eighth exception is that the notice of sale was not in accordance with that part of section 59, Article 81, of the Code, which requires such notice to be put up " at the Court House door, and at *the most public places in such county.*" The statement of the collector, which is taken as proof without objection by either party, shows that the notice was put up at " *three other* of the most public places in said county." This, it is insisted, necessarily implies there were other public places at which it was not put up, thereby rendering the notice insufficient, as the section referred to requires it to be put up at *all* the most public places. While it is essential that a party claiming title under a tax sale should show affirmatively that the collector had complied with every

requirement of the law in regard to such sale, *Polk vs. Rose & Cronhardt,* 25 *Md.,* 153; *Beatty, et al. vs. Mason, et al.,* 30 *Md.,* 409, such a reasonable construction must be put upon the law as will render his duties possible, and be in conformity with the true meaning and intent of the Legislature. The Legislature could not have intended that the notice should be put up at *all* the most public places in the county. It would be imposing a duty which could scarcely be performed, certainly not without great and unnecessary labor and expense. "At the most public places" must be construed to mean at *more than one public place,* and if this requirement is obeyed by the collector in good faith the law is substantially complied with. Its object is to prevent secret sales, and the true question to be determined under its provisions is the sufficiency of the notice to accomplish that purpose. If the notices are put up at public places remote and distant from the property to be sold, although it might be a compliance with the letter of the law, yet it might indicate such bad faith on the part of the collector as would invalidate the sale. But in the present case we can perceive no well founded objection to the notice given. We think the purpose and meaning of the law were complied with, and that the exception ought to have been overruled.

It has been argued that the irregularities upon the face of the proceedings are not open for examination upon the final hearing, on the ground that all questions of that kind were finally decided by the Court before passing the order of publication provided for by the Act of 1870, ch. 312. That law, after providing that the collector of taxes shall report the sale of any land made by him, together with all the proceedings in relation thereto, to the Circuit Court of the judicial circuit where the land sold is situated, directs that "the Court to which such report shall be made shall examine the said proceedings, and *if the same appear to be regular and the provisions of law in relation thereto have been complied with,* shall order notice to be given by advertisement published in such

newspapers as the Court shall direct, warning all persons interested in the property sold to be and appear by a day certain, in the said notice to be named, to show cause, if any they have, why said sale should not be ratified and confirmed." It is true that this law imposes upon the Court the important duty of carefully examining the regularity of the collector's proceedings, and of being satisfied that he has performed all things required of him by the law in making such sale, before granting the order for publication, yet the proceeding is entirely *ex parte*, and is not intended to be final and conclusive. The order is only preliminary, and all questions touching the validity of the sale properly arise upon the final hearing for ratification.

In the present case we think the Court below properly refused to ratify the sale, and its judgment will therefore be affirmed.

*Judgment affirmed.*

(Decided 18th June, 1872.)