MAYOR AND CITY COUNCIL OF BALTIMORE *v.* MARYLAND TRUST COMPANY, TRUSTEE, ET AL.

[No. 36, April Term, 1941.]

*Decided June 10th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Lawrence B. Fenneman, Deputy City Solicitor,* and *Michael J. Hankin, Assistant City Solicitor,* with whom was *Charles C. G. Evans, City Solicitor,* on the brief, for the appellant.

*Frederick J. Singley* and *Frederick J. Singley, Jr.,* with whom were *Hinkley & Singley* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, sustaining in part exceptions filed by Maryland Trust Company, Trustee, to the account of the auditor as stated in the case of *Maryland Trust Company, etc., Trustee, v. The Hotel Rennert Company of Baltimore City.*

The Hotel Rennert Company of Baltimore City, a body corporate, from its incorporation until February 10th, 1932, when receivers were appointed by the Circuit Court of Baltimore City to take over its management, operated the Hotel Rennert, located at Saratoga and Liberty Streets. On March 1st, 1899, the company executed a mortgage to the Continental Trust Company, Trustee, upon the hotel property and the furniture,

fixtures and supplies contained therein, to secure an issue of $750,000 first mortgage gold bonds due and payable March 1st, 1949. Some of the bonds were retired by the operation of a sinking fund, but the issue has been in default as to both principal and interest since March 1st, 1932, and there now remains due appellee, successor by merger to the Continental Trust Company, Trustee, the sum of $723,721.68 on behalf of the bondholders.

On February 10th, 1932, a creditor of the hotel company filed a bill of complaint in the Circuit Court for Baltimore City, alleging insolvency of the company, and on the same day the chancellor assumed jurisdiction and appointed Charles P. Coady, Frederick J. Singley and John H. Shaab, as receivers, to take charge of the realty and personalty of the Hotel Rennert Company, to collect the outstanding debts due it and "convert its property, estate and assets into money * * *." Of the receivers appointed, Frederick J. Singley is the survivor, and at the time of the receivership, taxes on the realty as well as corporation taxes owed by the hotel company were in default and sufficient moneys were not realized from the conduct of the receivership by the operation of the hotel property to permit a substantial reduction of such taxes. Appellant on March 31st, 1932, filed in the receivership case a claim for 1931 Maryland corporation taxes. Subsequently on October 6th, 1932, an additional claim was filed by the city for 1932 Maryland corporation taxes, while on October 6th, 1934, a new claim was filed by appellant for such taxes covering the years 1931 to 1934, inclusive.

On November 27th, 1934, it filed a petition seeking authority to sell the real estate for state and city taxes due thereon. This effort was resisted by the receivers, who answered the petition, and it is conceded that the chancellor failed to grant the city's request for the sale of the real estate in satisfaction of such tax claims.

On December 29th, 1939, Maryland Trust Company, successor trustee under the indenture of mortgage dated March 1st, 1899, filed its petition, in the court having jurisdiction over the receivers, for authority to assert its lien for the benefit of the bondholders and two days later such authority was granted, while on February 27th, 1940, the court passed its decree directing the trustee to sell. The receivership proceeding and the proceeding instituted by the trustee were consolidated, and at the sale the real property was bought by appellant for the amount of taxes due it. The personalty subject to the mortgage lien was sold for $9,113.46, and this amount was increased by receipts from other sources to $10,582.98.

The contention in this case relates to the proper application of that sum, which was by the auditor allowed appellant upon its claim of $12,058.27 for taxes, interest and penalties thereon upon tangible personalty for the years of 1931 to 1940, both inclusive. Exceptions filed by appellee to that audit were heard by the chancellor, who ordered the sum of $4,085.52 distributed to appellant for taxes, interest and penalties thereon due it for the years 1935 to 1940, inclusive, and the remainder of the sum, amounting to $5,777.46, was distributed *pro rata* between appellant upon its tax claim, with interest and penalties for the years 1931 to 1934, inclusive, amounting to $7,252.95, and appellee on behalf of the claims of bondholders, which amounted to $723,721.68. No objection is raised by appellee to the allowance in full of taxes levied and assessed by appellant for the years 1937 to 1940, inclusive, except as to penalties, and although, in addition to allowing preferences for the years last stated, the chancellor also allowed the city's tax claims for the years of 1935 and 1936, appellee has not appealed. So that at the outset it will be seen that in distributing the sum of $10,582.98, to which the exceptions related, the chancellor accepted neither the contentions of appellee nor

appellant, for according to appellee's contention no taxes should have been allowed for the years 1931 to 1936, inclusive, while appellant insisted that taxes for those years were allowable as preferential claims. It will also be noted that the chancellor, while denying a preferential status of the tax claims of the City for the years 1931 to 1934, inclusive, did allow such claims to participate ratably with the claims on behalf of the bondholders.

Appellee objects to the allowance of taxes as preferential claims for 1935 and 1936 upon the ground that the City failed to pursue its remedy for the collection of such taxes with diligence, and, as stated, makes the further contention that in no event should the City be allowed to collect penalties for non-payment of any of the taxes. A further contention of the unfairness of the assessment was made before the chancellor, but this was decided adversely to appellee in the lower court, and we do not understand the correctness of that view is questioned upon this appeal. Moreover, we are of the opinion that under the facts shown such contention was without merit, inasmuch as such taxes had been regularly levied and assessed upon the property before or after the charter of the Hotel Company had been forfeited and the date of finality had long since passed, there being no contention of the existence of any fraud, for the parties were fully aware of the amount of the assessment. *Tidewater Oil Co. v. Anne Arundel County,* 168 Md. 495, 178 A. 221; *Aejis Company v. State Tax Commission,* 156 Md. 590, 144 A. 842; *Baltimore Steam Packet Co. v. Baltimore,* 161 Md. 9, 155 A. 158; Code, art. 81, sec. 190.

For the appellant it is contended (a) that the provisions of Code of Public General Laws, article 81, section 160, and Public Local Laws of Baltimore City (1938), section 1124, page 632, limiting the right of the City to collect taxes to a period of four years from the time they became due have no application in the present case, because the property was in *custodia legis,* being under the jurisdiction of a court of equity, without whose

sanction and authority it could not proceed to enforce their collection; (b) that taxes for 1931 to 1940 inclusive, together with interest and penalties constitute a preferred claim in the distribution, resulting from a sale of the property.

In our judgment the soundness of appellant's contentions is not open to dispute upon the authorities last cited, unless we can find or assume that appellant has failed to pursue its rights with reference to having its tax claims for all the years allowed as preferences, and the court fails to find that in this regard the City has failed. True, it at no time filed with the chancellor having jurisdiction over the receivers a petition to permit it to enforce its tax claims against the personalty. It did file such a petition to enforce the collection of taxes against the real estate, and the chancellor failed or refused to permit such action to be taken. There was also filed from time to time with the receivers the amount of the taxes due upon the personalty. The personalty being in the custody of the receivers, who are under the jurisdiction of the court, could not without the court's consent have been subjected to distraint proceedings, and it is unreasonable to assume that the chancellor, who refused to permit the real estate to be sold for taxes, would have looked favorably upon a petition to distrain upon the personalty, thus stripping the realty of the furniture, fixtures and appliances and foreclose all possibility of a sale of the hotel property as a going concern. It seems to the court that under all the circumstances with which it was confronted, appellant cannot be held to have forfeited or lost its right to insist upon allowances of taxes for 1931 to 1940, inclusive, as preferential claims, for manifestly to have attempted to secure the court's sanction to perfect its lien upon the personalty would have been a mere futility. *Prince George's County v. Clarke,* 36 Md. 206; *Gould v. Baltimore,* 58 Md. 46; *Hebb v. Moore,* 66 Md. 167, 7 A. 255; *Thompson v. Henderson,*

155 Md. 665, 142 A. 525; *Madore v. Thompson,* 155 Md. 676, 142 A. L. R. 529; *Blakistone v. State,* 117 Md. 237, 83 A. 151.

The court concurs in the view of the chancellor that interest and penalties upon unpaid taxes allowed by law form a part of such taxes and constitute a preferred claim to the same extent as do the taxes, in the distribution of proceeds arising from the sale by a ministerial officer. A similar view was entertained by this court in *Blakistone v. State, supra,* and was followed in *Baltimore Trust Co. v. Interocean Oil Co.,* D. C., 30 Fed. Supp. 560.

Appellee argues that the effect of the decision in *Blakistone v. State* should be limited, and that under the immediate circumstances of this particular case, such interest and penalties should not attach to the taxes so as to be given a preferential status. In our judgment, this contention is not supported by the weight of authority. Indeed, there are no special circumstances in the present case which warrant us in holding that the equities of the bondholders, who concededly must lose the major part of their investment, are not junior to the tax claims of appellant.

It follows from what has been said that the part of the order appealed from which denied a preferential status to appellant's tax claims for the years 1931 to 1934, inclusive, was erroneous, and must be reversed.

> *Order affirmed in part and reversed in part, and case remanded for the passage of an order not inconsistent with the views expressed herein, with costs to appellant, to be paid out of the funds in appellee's hands.*